UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALYSHA MANGAR and CHASELYNN BENAVIDES on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>v.<br><br>AMAZON.COM SERVICES LLC,<br><br>        Defendant. | Civil Action No. 24-0188 (JXN) (AME)<br><br>**OPINION** |

**NEALS**, District Judge:

This matter comes before the Court upon Defendant Amazon.com Services LLC's ("Defendant") motion to dismiss Plaintiffs Malysha Mangar ("Mangar") and Chaselynn Benavides's ("Benavides") (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, Complaint (ECF No. 1) ("Complaint" or "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6), and to strike the class allegations, pursuant to Federal Rule of Civil Procedure 12(f). (ECF No. 16). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1331 and 1391(b)(2), respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, the Court **DENIES** in its entirety Defendant's motion to dismiss and strike Plaintiffs' class allegations (ECF No. 16).

    **I.**    **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs, on behalf of themselves and similarly situated plaintiffs, bring this action, for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Plaintiffs allege the following to support their claims. Defendant "maintains an electronic system that tracks

the amount of medical leave an employee is entitled to under various state and federal laws." (Compl. ¶ 2). According to the Complaint, "[w]hen an employee requires use of the approved medical leave, the employee would either report the necessary time off on the Amazon app or report the time off on the Amazon App or call[] [in] to report the time off." (*Id.* at ¶ 3). Thereafter, upon notification that an employee "required time off for their approved medical leave, the system generates a confirmation email sent to the employee showing the amount of medical leave the employee has used and the employee's remaining time left to be used for medical leave." (*Id.* at ¶ 4).

Since September 2020, Mangar worked for Defendant as a Warehouse Associate in its Edison, New Jersey warehouse. (*Id.* at ¶ 15). Mangar's daughter suffers from chronic constipation. (*Id.* at ¶ 16). In September 2022, Mangar requested intermittent leave to take care of her daughter from September 2022, through September 2023. (*Id.* at ¶ 17). Plaintiffs allege that Defendant approved Mangar's request for intermittent leave. (*Id.* at ¶ 18). When Plaintiff needed to take time off, "she would report the time off on the Amazon App or call and have someone report her missed days," and "receive a confirmation email showing the days she used and her remaining time left under the [FMLA]." (*Id.* at ¶¶ 19-20).

On April 12, 2023, Plaintiffs allege Mangar received her last confirmation email. (*Id.* at ¶ 21). The email stated that Mangar "was approved for intermittent medical leave from September 29, 2022 through September 28, 2023 at the frequency of 'as medically necessary.'" (*Id.* at ¶ 22). The email also provided: (i) "Mangar was entitled to 52 days and had used 34 days, 9 hours and 56 minutes[;]" and (ii) "as of April 12, 2023, . . . Mangar had 21 days and 54 minutes remaining." (*Id.* at ¶¶ 23-24).

Thereafter, on April 15, 2023, Mangar received an email with a termination letter advising that she "had been involuntarily terminated as of April 14, 2023." (*Id.* at ¶ 25). Plaintiffs allege Mangar "was informed that she was terminated for taking time off." (*Id.* at ¶ 26). While Mangar informed Defendant's ERC Team that she had been approved for intermittent leave and should not have any absences against her, the "ERC Team told . . . Mangar there was nothing that they could do since she was already terminated." (*Id.* at ¶¶ 27-28).

Since October 2016, Benavides worked as a Fulfillment Associate for Defendant's Carteret location. (*Id.* at ¶ 30). Plaintiffs allege Benavides suffers from herniated discs. (*Id.* at ¶ 31). In April 2023, Benavides was approved for an accommodation under the FMLA for intermittent leave from April 2023, until October 31, 2023, to take "four hours of leave up to three days per week." (*Id.* at ¶¶ 32-34).

On August 11, 2023, Benavides "received an email that further documentation was required to support her request for leave" and Benavides had until August 31, 2023, to submit the requested documentation. (*Id.* at ¶¶ 35-36). However, on August 20, 2023, Benavides received an email advising she had "negative 15:26 hours of unpaid time and was being terminated." (*Id.* at ¶ 37). While Benavides was terminated on August 20, 2023, Plaintiffs allege she received an August 28, 2023 email from Defendant advising that she had eight hours of intermittent leave remaining. (*Id.* at ¶ 38).

On January 11, 2024, Plaintiffs filed a Complaint against Defendant, alleging interference under the FMLA (Count I) and retaliation under the FMLA (Count II). (*See generally* Compl.). The Complaint seeks to define the class as "Employees of Defendant Amazon who took approved medical leave under the Family and Medical Leave Act and were involuntarily terminated during the period of the approved medical leave." (Compl. ¶ 42).

3

On May 6, 2024, Defendant filed the instant motion to dismiss the Complaint and strike the class allegations. (ECF No. 16) ("Br."). Plaintiffs opposed the motion (ECF No. 17) ("Opp'n"), and Defendant replied (ECF No. 21) ("Reply"). This matter is now ripe for consideration.

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his or] her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true[.]" *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged

4

do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### B. Motion to Strike

"'[T]he authority to strike class allegations stems from Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D).'" *Niemczyk v. Pro Custom Solar LLC*, No. 19-7846, 2022 WL 884359, at *2 (D.N.J. Mar. 25, 2022) (quoting *Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, No. 12-0929, 2015 WL 401443, at *2 (W.D. Pa. Jan. 28, 2015)). "The Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 243 (E.D. Pa. 2012) (cleaned up); *see also Gray v. BMW of N. Am.*, 22 F. Supp. 373, 386 (D.N.J. 2014) (noting same).

Similarly, motions to strike class allegations from a pleading are "disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety." *Gray*, 22 F. Supp. 3d at 386 (citation omitted). Class certification, governed by Rule 23(c), dictates that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Under Rule 23(d)(1)(D), the court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

### III.  DISCUSSION

#### A.  Motion to Dismiss

"The purposes of the Family [and] Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, are to 'balance the demands of the workplace with the needs of families' and 'to entitle employees to take reasonable leave for medical reasons.'" *Petras v. IAP Worldwide Servs., Inc.*, No. 07-170, 2008 WL 5395750, at *11 (D.N.J. Dec. 23, 2008) (quoting 29 U.S.C. § 2601(b)(1) and (2)).  To that end, the FMLA was enacted to provide up to twelve weeks of leave for workers whose personal or medical circumstances necessitate that they take time off from work in excess of what their employers are willing to provide.  29 U.S.C. § 2601, *et seq.*; *see also Victorelli v. Shadyside Hosp.*, 128 F.3d 184, 186 (3d Cir. 1997) (citing 29 C.F.R. § 825.101).  To protect an employee's rights under the FMLA, employers are prohibited from engaging in certain actions. First, Section 2615(a)(1) makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided."  *Id.* at § 2615(a)(1) (a so-called "interference" claim).  Second, Section 2615(a)(2) makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful." *Id.* at § 2615(a)(2) (a so-called "retaliation" claim).  As Plaintiffs assert claims under both theories, the Court addresses these claims in turn.

##### 1.  FMLA Interference Claim (Count I)

To make a claim of interference under FMLA, a plaintiff must establish:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

6

*Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (quoting *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (citation omitted)).  Stated differently, to assert an interference claim, "the employee only needs to show that he [or she] was entitled to benefits under the FMLA and that he [or she] was denied them."  *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a), 2614(a)).  "Under this theory, the employee need not show that he [or she] was treated differently than others[, and] the employer cannot justify its actions by establishing a legitimate business purpose for its decision."  *Id.* at 119-20.  "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA."  *Id.* at 120.  "Because the FMLA is not about discrimination, a *McDonnell-Douglas* burden-shifting analysis is not required."  *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006).  Summing up the applicable standard, the Third Circuit Court of Appeals has "'made it plain that, for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld.'"  *Capps*, 847 F.3d at 156 (quoting *Ross*, 755 F.3d at 192).

Defendant first argues that Plaintiffs' interference claim fails because they "have not alleged facts showing that they were eligible for FMLA leave."  (Br. at 13).  Citing to 29 U.S.C. § 2611(2)(A), Defendant contends Plaintiffs have not pled "that they worked 1,250 hours in the 12 months preceding their requests for leave."  (*Id.*)  29 U.S.C. § 2611(2)(A) defines an "eligible employee" as "an employee who has been employed— (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period."  Upon review of the Complaint, the Court recognizes Plaintiffs do not explicitly plead that Plaintiffs worked "1,250 hours during the previous 12-month period."  However, the Complaint does allege Defendant

7

approved Plaintiffs' respective requests for intermittent leave. (Compl. ¶¶ 17, 33). The Court finds at this stage that Plaintiffs sufficiently allege that they constituted "eligible employee[s]."[1]

Defendant further argues that Plaintiffs have not sufficiently alleged that they or their family members suffered from health conditions that constituted "serious health condition[s]" under the FMLA. Under the FMLA,

> an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:
>
> . . . .
>
> > (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.
> >
> > (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1)(C)-(D). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves--(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11); see also 29 C.F.R. § 825.113.[2]

---

[1] In its reply, Defendant contends that Plaintiffs' suggestion "that they are excused from establishing eligibility because Amazon 'approved their initial request for FMLA leave'" is incorrect. (Reply at 11). In support of this proposition, Defendant cites to *Jacobs v. United States Parcel Service, Inc.*, No. 15-381, 2016 WL 8192993 (W.D.N.C. Dec. 5, 2016), *aff'd*, 688 F. App'x 229 (4th Cir. 2017), and *Carle v. Red Thread Spaces, LLC*, No. 15-1724, 2017 WL 3994786 (D. Conn. Sept. 11, 2017). However, the courts in both *Jacobs* and *Carle* considered summary judgment motions, rather than motions to dismiss. *See generally Jacobs*, 2016 WL 8192993; *Carle*, 2017 WL 3994786. As such, the Court declines to employ the summary judgment standard from *Jacobs* and *Carle* at this stage of the proceedings.

[2] The FMLA's implementing regulations define "continuing treatment by a health care provider," in relevant part, as:

> (a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> > (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct

Defendant argues "Plaintiffs do not provide any of the information that would be necessary to determine whether the alleged medical conditions that formed the basis of their FMLA leave requests—'chronic constipation' and 'herniated discs'—rose to the level of 'serious health conditions' under the FMLA." (Br. at 13-14). The Complaint does explicitly allege with respect to Mangar, however, that her daughter suffers from chronic constipation and Mangar was approved for intermittent leave to care for her daughter on this basis. (Compl. ¶¶ 16-18). Similarly, the Complaint alleges, with respect to Benavides, that she suffers from herniated discs, was "approved

---

supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

(3) The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.

(4) Whether additional treatment visits or a regimen of continuing treatment is necessary within the 30–day period shall be determined by the health care provider.

(5) The term extenuating circumstances in paragraph (a)(1) of this section means circumstances beyond the employee's control that prevent the follow-up visit from occurring as planned by the health care provider. Whether a given set of circumstances are extenuating depends on the facts. For example, extenuating circumstances exist if a health care provider determines that a second in-person visit is needed within the 30–day period, but the health care provider does not have any available appointments during that time period.

. . . .

(c) Chronic conditions. Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115(a), (c).

9

for an accommodation under the Family and Medical Leave Act for intermittent leave[,]" and was "approved for four hours of leave up to three days per week." (*Id.* at ¶¶ 31-34). At this stage, the Court finds Plaintiffs have adequately alleged serious health conditions that would afford them leave under the FMLA.

Finally, Defendant contends Plaintiffs' interference claim fails because "Plaintiffs fail to plead that 'FMLA benefits were actually withheld.'" (Br. at 15-16 (quoting *Ross*, 755 F.3d at 192)). Defendant argues that "[b]ecause Plaintiffs have not pled sufficient facts to show that they were denied any FMLA leave they requested, their FMLA interference claim must be dismissed." (*Id.* at 15).

The Court disagrees with Defendants and finds the Complaint sufficiently alleges FMLA benefits were withheld from Plaintiffs. As discussed *supra*, the Complaint alleges Plaintiffs were both approved by Defendant for intermittent leave. The Complaint further alleges Mangar (i) had utilized her intermittent leave, (ii) was informed, through an August 12, 2023 email, that she had "21 days and 54 minutes remaining," (iii) but was then "involuntarily terminated" "for taking time off" as of April 14, 2023. (Compl. ¶¶ 20-21, 24-26). The Complaint further alleges Benavides, (i) was required, by way of an August 11, 2023 email, to provide documentation to support her request for leave, (ii) was provided until August 31, 2023, to provide this documentation, (iii) was terminated on August 20, 2023, after receiving an email indicating she had negative unpaid time, (iv) but then received an email on August 28, 2023, wherein Defendant stated she had eight hours of intermittent leave remaining. (*Id.* at ¶¶ 35-38). The Court finds these allegations are sufficient to make out a claim for FMLA interference. Therefore, Defendant's motion to dismiss Count I of the Complaint is denied.

## 2. FMLA Retaliation Claim (Count II)

To assert an FMLA retaliation claim, a plaintiff "must allege (1) she invoked her right to leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 158-59 (3d Cir. 2015) (citing *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012)).

Defendant contends that Plaintiffs' retaliation claim fails because there are insufficient facts to support the first and third elements. (Br. at 16-19). The Court disagrees. First, the Complaint adequately alleges Mangar and Benavides invoked their rights to leave as both requested and were approved for intermittent leave by Defendant. (Compl. ¶¶ 17-18, 32-34). Turning to the third element, "[w]hether a causal link exists 'must be considered with a careful eye to the specific facts and circumstances encountered.'" *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000). "To demonstrate a causal connection, a plaintiff generally must show 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Id.* (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Here, the Court finds that Plaintiffs have adequately pled the third required element of a retaliation claim under FMLA.[3] With respect to Mangar, Plaintiffs allege: (i) she "would report the time off on the Amazon App or call and have someone report her missed days[]"

---

[3] In moving to dismiss the retaliation claim, Defendant argues "there is nothing about being terminated while in an 'approved' status for intermittent FMLA leave that gives rise to an inference that the termination decision was somehow retaliatory for having taken or sought intermittent FMLA leave." (Br. at 18-19). However, as discussed *infra*, the Court finds Plaintiffs have adequately alleged a causal connection between their respective requests for intermittent leave and subsequent terminations.

when she needed to take off to take care of her daughter; (ii) each time she reported off, she "would receive a confirmation email showing the days she had used and her remaining time left under the Family Medical Leave Act[;]" (iii) she "last received such an email on April 12, 2023"; (iv) the email, in pertinent part, said she had "21 days and 54 minutes remaining[;]" (v) then, she received an April 15, 2023 "email with a termination letter confirming that . . . Mangar had been involuntarily terminated as of April 14, 2023" for "taking time off." (Compl. ¶¶ 19-26). The Court finds the allegations set forth "an unusually suggestive temporal proximity" between Mangar receiving the April 12, 2023 confirmation email after reporting time off to care for her daughter and subsequent termination as of April 14, 2023.

Plaintiffs allege that Benavides was (i) approved for intermittent leave in April 2023, (for leave from April 2023, until October 31, 2023); (ii) required, by way of an August 11, 2023 email, to submit further documentation "to support her request for leave" and "had until August 31, 2023 to provide this documentation"; (iii) but was then terminated on August 20, 2023; and (iv) thereafter, was informed by way of an August 28, 2023 email that she had eight hours of intermittent leave remaining. (Compl. ¶¶ 32-33, 35-38). The Court finds the mere days between Defendant's request for additional documentation from Benavides on August 11, 2023, and her subsequent termination on August 20, 2023 – notably eleven days before she had to submit the additional documentation – shows "an unusually suggestive temporal proximity" between the request and her subsequent termination. As such, the Court finds Plaintiffs have adequately alleged their respective terminations were "causally related" to their invocations of their FMLA rights. Accordingly, Defendant's motion to dismiss Count II of the Complaint is denied.

### B. <u>Motion to Strike</u>

"Generally courts do not consider whether a proposed class meets the Rule 23 class requirements until after Plaintiffs move for class certification." *6803 Blvd. E., LLC v. DIRECTTV, Inc.*, No. 12-2657, 2012 WL 3133680, at *2 (D.N.J. July 31, 2012); *see also Durso v. Samsung Electronics Am., Inc.*, No. 12-5352, 2013 WL 5947005, at *13 ("Dismissal of class claims prior to discovery and on a motion to certify the class by plaintiff is the exception rather than the rule.") (citations omitted). A defendant may move to strike class allegations prior to discovery, however, in rare cases "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011).

The Complaint seeks to define the class as: "Employees of Defendant Amazon who took approved medical leave under the Family and Medical Leave Act and were involuntarily terminated during the period of the approved medical leave." (Compl. ¶ 42). Defendant argues that even if the Court were not to dismiss Plaintiffs' claims under Rule 12(b)(6), the Court should strike, pursuant to Rule 12(f), any class allegations because Plaintiffs' allegations "demonstrate that their proposed class could not possibly meet the requirements of Rule 23." (Br. at 20). Plaintiffs counter that they satisfy the requirements for class certification. (Opp'n at 19-23).

It is premature at this stage of the proceeding for the Court to address Defendant's arguments calling into question the viability of the purported class. *See generally Durso*, 2013 WL 5947005, at *3 ("Generally courts do not consider whether a proposed class meets the [Federal Rule of Civil Procedure] 23 class requirements until after plaintiffs move for class certification." (quoting *6803 Blvd. E., LLC v. DIRECTTV, Inc.*, No. 12-2657, 2012 WL 3133680, at *2 (D.N.J. July 31, 2012))). Moreover, it is not apparent from the allegations before the Court "that the

13

requirements for maintaining a class action cannot be met." *Landsman*, 640 F.3d at 93 n.30. Accordingly, the Court will deny Defendant's motion to strike class allegations.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** in its entirety Defendant's motion to dismiss and strike Plaintiffs' class allegations (ECF No. 16).

An appropriate Order accompanies this Opinion.

DATED: 12/28/2024

HONORABLE JULIEN XAVIER NEALS
United States District Judge